# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Farnam Street Financial, Inc., a
Minnesota corporation,

                        Plaintiff,

v.

Balaton Group, Inc., a Canadian
corporation and Robert Kubbernus, an
individual,

                        Defendant.

**MEMORANDUM OF LAW &
ORDER**

Civil File No. 10-4277 (MJD/FLN)

---

Donald T. Campbell, Leonard Street and Deinard, PA, Counsel for Plaintiff.

Seth J. Leventhal, Leventhal PLLC, Counsel for Defendants.

---

## I.     INTRODUCTION

This matter is before the Court on Plaintiff Farnam Street Financial, Inc.'s

Motion for Summary Judgment.  [Docket No. 12]  Oral argument was heard

February 25, 2011.

## II.    FACTUAL BACKGROUND

### A. The Parties' Contractual Relationship

1

Plaintiff Farnam Street Financial Inc. ("FSF") is a Minnesota corporation, engaged in the business of leasing equipment. Defendant Balaton Group, Inc. ("Balaton") is a Canadian corporation, with its principal place of business in Texas. Balaton is in the business of providing financial consulting to corporations. Defendant Robert Kubbernus ("Kubbernus") is the CEO and President of Balaton.

In January 2009, FSF and Balaton entered into a commercial lease agreement (the "Master Lease") by which FSF agreed to lease computer and other related equipment to Balaton. The Master Lease defines the equipment being leased as the "equipment listed by serial number and related services, and software and related services on the Lease Schedule(s) attached hereto or incorporated herein by reference from time to time." The Master Lease refers to the Master Lease and all the lease schedules as the "Lease Agreement." The language of the Master Lease states that "[t]he equipment shall, at all times, be the sole and exclusive property of (FSF)."

Furthermore, as security for FSF's leasing of equipment to Balaton, Kubbernus signed an unconditional continuing personal guaranty (the

"Guaranty").  Under the terms of the Guaranty, Kubbernus guaranteed full and

punctual payment of all amounts that Balaton owed under the Lease Agreement.

### B.  Defendants' Breaches

Balaton made its payments under the Lease Agreement until March 2009,

when Balaton stopped making its monthly lease payments, as required under

Lease Schedule No. 001.  In September 2009, FSF commenced an action in this

Court against the Defendants for breach of contract.  <u>Farnam Street Financial,</u>

<u>Inc. v. Balaton Group, Inc.,</u> No. 09-cv-02640, Docket No. 1 (D. Minn.)  (the "First

Lawsuit").

Shortly after this suit was filed Defendants retained counsel and contacted

FSF with a settlement offer which included continuing the lease under a new

lease schedule.  The parties agreed to a settlement and that suit was dismissed.

<u>Farnam Street</u>, No. 09-cv-02640, Docket No. 8.  FSF agreed to accept a sum of

$64,959, and continue leasing equipment to Balaton under Lease Schedule No.

002.  Lease Schedule No. 002 has an "Attachment A," which lists the equipment

which is leased to Balaton by FSF.

Lease Schedule No. 002, which became effective on November 1, 2009, has

a term of 24 months and Balaton is required to make monthly payments of

$12,000.  Kubbernus signed Lease Schedule No. 002 on behalf of Balaton.

Kubbernus, by signing the Acknowledgment of Guarantor on this lease schedule,

reaffirmed that "the obligations arising hereunder are guaranteed by

[Kubbernus] under the terms and conditions of that certain Unconditional

Continuing Personal Guaranty entered into by Farnam Street Financial, Inc., as

Lessor and Robert Kubbernus as Guarantor on January 15, 2009."  (Olsen Decl.

Ex. D.)

Balaton performed under Lease Schedule No. 002 until February of 2010,

when Balaton stopped making monthly lease payments as required by that lease

schedule.  Balaton has not made any lease payments since February 2010.

Kubbernus has also not complied with his obligations to guaranty Balaton's

nonpayment.  Under the Lease Agreement, any nonpayment of amounts due for

a period of ten days constitutes an event of default.

Under the Lease Agreement, if Balaton commits an event of default, FSF is

entitled to recover all unpaid accrued and unpaid lease charges and other

amounts due and owing, accelerate all current and future lease charges, recover

late charges of 1.5% of past due amounts, retake possession of the leased

equipment, and demand that Balaton return the leased equipment to a location

that FSF specifies.  Furthermore, both the Lease Agreement and the Guaranty

provide that FSF is entitled to recover attorney's fees caused by a breach.

### C. Procedural History

On October 19, 2010, FSF commenced this action by filing a three count

Complaint.  [Docket No. 1]  The Complaint alleges the following: Count I: Breach

of Contract Against Balaton; Count II: Breach of Contract Against Kubbernus;

and Count Three: Conversion Against Balaton.  Defendants filed a joint answer

in which they assert that the Lease Agreement and Guaranty are void due to the

doctrine of economic duress, void as unconscionable under Texas law, and are

usurious contracts of adhesion.  [Docket No. 6]  On December 22, 2010, FSF filed

a Motion for Summary Judgment on Counts I & II.  In its Memorandum, FSF has

agreed that if the Court grants FSF's motion, FSF will dismiss Count III and

consent to the entry of final judgment on all claims.  (Pl.'s Mem. in Support of

Summary Judgment 6 n.1.)

## III.   DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment is only appropriate when "there is no dispute of fact and

where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted.  Id.  "[I]n ruling on a motion

for summary judgment, the nonmoving party's evidence 'is to be believed, and

all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

### B.  Federal Rule of Civil Procedure 56(d)

Pursuant to former Rule 56(f) of the Federal Rules of Civil Procedure,

Defendants request that this Court delay ruling on FSF's Motion for Summary

Judgment until Defendants have had an opportunity to conduct discovery.  As of

December 1, 2010, Rule 56(f) is recodified as Rule 56(d).  This recodification

however, "carries forward without substantial change the provisions of the

former subdivision (f)."  Fed. R. Civ. P. 56(d) 2010 amend. cmt. (2010).  Rule 56(d)

states:

> If a nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take
> >     discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "To obtain a Rule 56(f) continuance, the party

opposing summary judgment must file an affidavit affirmatively demonstrating

. . . how postponement of a ruling on the motion will enable him, by discovery or

other means, to rebut the movant's showing of the absence of a genuine issue of

fact.'"  Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (citation

omitted).  In this affidavit the non-moving party must show "what specific facts

further discovery might uncover."  Anuforo v. Comm'r of Internal Revenue, 614

F.3d 799, 808 (8th Cir. 2010) (citation omitted).  The Eighth Circuit has stated that

"Rule 56 of the Federal Rules of Civil Procedure does not require trial courts to

allow parties to conduct discovery before entering summary judgment."

Humphreys v. Roche Biomedical Labs., 990 F.2d 1078, 1081 (8th Cir. 1993).

Defendants contend that Plaintiff's motion for summary judgment at this time is premature, because there has been no discovery at all. Defendants identify a number of facts which they state are material and in dispute. First, Defendants contend that Lease Schedule No. 002 lists equipment which Balaton or other third parties own, to which FSF has no legal claim. Second, Defendants contend that there is an issue of fact as to where the Lease Agreement and the Guaranty were made, delivered, and executed, which goes to the Court's choice-of-law analysis. Third, Defendants assert that there are issues of fact relating to the transactions at issue. Fourth, Defendants argues that there are issues concerning the choice of law clause in the lease upon which Defendants argue they should be able to take discovery.

The Court finds that Defendants are not entitled to any relief under Rule 56(d). First, Defendants' statement that it is not clear what leased equipment FSF owned is contradicted by the terms of the Lease Agreement, which states that the equipment is the sole and exclusive property of FSF. Moreover, because Defendants' contention is contradicted by the terms of the fully integrated Lease

Agreement, the parol evidence rule prevents Defendants from introducing evidence which contradicts the term of the contract. This fact prevents Defendants from receiving relief under Rule 56(d). See United States, Small Bus. Admin. v. Light, 766 F.2d 394, 398 (8th Cir. 1985) ("Even if [defendant] had been given additional time to conduct discovery and had obtained testimony which appeared to contradict the written guaranty agreement, the parol evidence rule would have barred the introduction of that testimony.").

Second, that there is no issue of fact with regard to Defendants' argument concerning where the contract was "made, executed, and delivered." The contract expressly states that the contract was "made, executed, and delivered" in Minnesota. Defendants have made no attempt to explain why they would sign a contract which made such a declaration if they did not believe it to be true.

Third, although Defendants' state that there are serious questions to be answered about the circumstances and terms of the transactions involved in this case, FSF is not trying to enforce the terms of any other contracts, and thus the events predating the formation of the Lease Agreement have nothing to do with whether the Minnesota choice of law provision in this Lease Agreement is enforceable.

Fourth, Defendants' assertion that there is an issue of fact concerning the motive of FSF in including the Minnesota choice of law provision is not enough to justify relief under Rule 56(d).  FSF includes this choice of law provision in all its lease agreements.  Further, it was Balaton who proposed settling the First Lawsuit by renewing the Lease Agreement which contained the Minnesota choice of law provision.

Since Defendants have not identified any specific facts that discovery might uncover which would rebut FSF's contention that there is an absence of genuine disputes of material fact with regard to the Minnesota choice of law provision, the Court will not grant Defendants any relief under Rule 56(d).

## C. Choice of Law

In diversity cases, a federal court applies the choice of law principles of the forum state.  Highwoods Properties, Inc. v. Exec. Risk Indem., Inc., 407 F.3d 917, 920 (8th Cir. 2005).  Accordingly, Minnesota's choice of law principles apply to the case at hand.  Both the Lease Agreement and the Guaranty contain Minnesota choice of law clauses.

"Minnesota traditionally enforces parties' contractual choice of law provisions [and] Minnesota courts have consistently expressed a commitment to

the rule that parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern." Hagstrom v. Am. Circuit Breaker Corp., 518 N.W.2d 46, 48 (Minn. Ct. App. 1994) (quoting Combined Ins. Co. of Am. v. Bode, 77 N.W.2d 533, 536 (Minn. 1956).  Consequently, "Minnesota courts generally enforce choice of law provisions, unless there is evidence that the parties did not negotiate such a provision in good faith and did so with an intent to evade the law." Transocean Grp. Holdings Party Ltd. v. South Dakota Soybean Processors, LLC, 663 F. Supp. 2d 731, 738 (D. Minn. 2009) (citation omitted).

In this case, FSF did not propose the Minnesota choice of law provisions to evade the law, or take advantage of a unique, obscure, or unfair feature of Minnesota law.  Furthermore, although Defendants make a blanket assertion that there are disputes of fact concerning FSF's motives in proposing the Minnesota choice of law provision, Defendants do not identify any specific facts which discovery may uncover that would show either intent to evade the law or bad faith on the part of FSF.  In fact, FSF is a Minnesota corporation, with all of its employees in Minnesota, executes all its agreements in Minnesota, and receives all payments in Minnesota.  FSF is in the business of leasing equipment to lessees

all around the country, such as Balaton, who often cannot obtain traditional financing.  Due to this fact, it is important for FSF that a Minnesota choice of law provision is part of all its leases, so that FSF knows that its standard lease will be uniformly interpreted and enforced under Minnesota law.

Additionally, Balaton is a sophisticated corporation that was represented by counsel when it entered into Lease Schedule No. 002.  Balaton was aware of the Minnesota choice of law clause, but during the settlement negotiations of the First Lawsuit, neither Balaton nor Kubbernus made any objection to this clause.

This Court has previously ruled that the Minnesota choice of law provision in FSF's standard lease is explicit and unambiguous.  Farnam Street Financial, Inc. v. Pump Media, Inc., No. 09-233, 2009 WL 4672668 (D. Minn. Dec. 8, 2009). In that case this Court, in analyzing an identical FSF form lease, held that that is was not unfair or unreasonable to enforce the Minnesota choice of law clause against out of state lessees.  Id. at *4  In particular, the Court stated "that enforcing the Lease Agreement's choice of law provision would not be unfair or unreasonable because the provision is explicit and was negotiated by two business entities assumed to have equal bargaining power."  Id.  The situation in

the case at hand is the same, and accordingly the Court finds that the Minnesota choice of law provision applies.

### D. Defendants' Default

There is no dispute that, under the terms of the Lease Agreement and Guaranty, Defendants have defaulted. Balaton has failed to make the required lease payments since March 2010, and Kubbernus has failed to meet his obligations under the Guaranty. Since Defendants' default has lasted more than ten days, Defendants are in default.

### E. Defendants' Defenses to Breach

#### 1. Economic Duress

Defendants, in their answer, claim that the Lease Agreement and the Guaranty are "void due to the doctrine of economic duress." (Answer Affirmative Defenses ¶ 3)

Under Minnesota law, "[d]uress is available as a defense to a contract only when the agreements is coerced by physical force or unlawful threats." Bond v. Charlson, 374 N.W.2d 423, 428 (Minn. 1985) (citation omitted). "In addition, a claim of duress will not be sustained when the claimant entered into the contract with full knowledge of all the facts, advice from an attorney, and ample time for

reflection." St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co., 411 N.W.2d 288, 291 (Minn. Ct. App. 1987).

Defendants have not, and cannot, claim that they entered into the settlement of the First Lawsuit because FSF threatened them with physical force or unlawful threats.  Additionally, Balaton is a sophisticated corporate entity, which was represented by counsel when it entered into Lease Schedule No. 002 in order to settle the First Lawsuit.  Accordingly, as a matter of law, Defendants defense of economic duress must fail.

### 2.    "Gross-Disparity Unconscionable"

Defendants also claim that the Lease Agreement is "gross disparity unconscionable" under Texas law.  As an initial matter, this defense fails as a matter of law because Minnesota law applies, not Texas law.

Additionally, however, an unconscionability argument under Minnesota law fails as well.  Unconscionability is a matter of law to be decided by the court. Osgood v. Med. Inc., 415 N.W.2d 896, 901 (Minn. Ct. App. 1987).  Under Minnesota law, "[a] contract is unconscionable if it such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair

man would accept on the other." <u>Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., Inc.</u>, 589 N.W.2d 499, 502 (Minn. Ct. App. 1999) (citations omitted).

Again, Balaton is a sophisticated corporate entity which agreed to the terms of the Lease Agreement on two occasions, and was represented by counsel the second time it agreed to these terms.  "If [Balaton] did not wish to be bound by the terms of the Lease Agreement that it now claims are unconscionable, it should have negotiated those terms from the contract." <u>Winthrop Res. Corp. v. Applied Card Sys., Inc.</u>, No 03-4119, 2004 WL 5586135, at *2 (D. Minn. Sept. 21, 2004).  The Court will not re-write the contract which the parties entered into because Balaton now contends that the contract is unconscionable.

### 3.   Usury

Defendants' usury defense must also fails as a matter of law.  Under Minnesota law, usury claims are only available in loan transactions, not lease transactions.  <u>See</u> <u>Miller v. Colortyme, Inc.</u> 518 N.W.2d 544, 549 (Minn. 1994) (identifying "a loan of money or forbearance of debt" as an essential element to a usury claim).  FSF argues that the Lease Agreement is not a loan of money or forbearance of debt.  This Court has previously held that FSF's form lease

agreement constitutes a lease, as opposed to a loan agreement.  Pump Media, 2009 WL 4672668, at *6.

Additionally, even if the Lease Agreement were a loan, under Minnesota law, corporations are statutorily barred from taking advantage of usury laws. Minn. Stat. § 334.022.  Corporations are "presumed to have an equal bargaining position with lenders."  Trapp v. Hanuch, 530 N.W.2d 879, 884 (Minn. Ct. App. 1995).  Accordingly, Defendants' defense of usury must be dismissed.

**F.  FSF's Damages**

The Court has found that Defendants have defaulted on the Lease Agreement and Guaranty and are entitled to summary judgment.  The next issue is the calculation of FSF's damages.

FSF, under the terms of the Lease Agreement, is entitled to recover all unpaid accrued and unpaid lease charges and other amounts due and owing, to accelerate all current and future lease charges, recover late charges of 1.5% of past due amounts, retake possession of the leased equipment, to demand that Balaton return the leased equipment to a location that FSF specifies, and to recover attorney's fees caused by Defendants' breach.  (Lease Agreement ¶¶ 3, 17-18; Guaranty ¶ 7.)

16

FSF seeks the following damages: (1) the unpaid lease charges of $120,000; (2) accelerated lease charges of $117,348.77; (3) late charges of $12,665.25; (4) property and sales taxes estimated at $33,368.38; and (5) attorneys' fees and cost for this litigation.  Further, it requests an order which directs Balaton to return the leased equipment to FSF pursuant to the terms of the Lease Agreement. (Lease Agreement ¶ 17(7).).  The Court determines that FSF is entitled to damages totaling two-hundred eighty-three thousand three-hundred and eighty-two dollars and forty cents ($283,382.40), as well as an order requiring Balaton to return the leased Equipment to FSF pursuant to the terms of the Lease Agreement.  Additionally, FSF is entitled to attorneys' fees and costs associated with this litigation.  Within twenty (20) days of the filing of this Order, FSF shall file an affidavit setting forth its costs and attorneys' fees incurred in association with enforcing its rights under the Lease Agreement and Guaranty.  Within twenty (20) days of FSF's filing of its affidavit, Defendants will submit opposition concerning the amount of FSF's requested attorneys' fees and costs.  The Court will then determine reasonable attorneys' fees and costs, and this amount will be added to the judgment amount described above.

### G. FSF's Conversion Claim

As stated above, FSF has agreed to dismiss Count III of its Complaint, Conversion, in the event that the Court granted FSF's motion for summary judgment.  (Pl.'s Mem. in Support of Summary Judgment 6 n.1.)  As the Court has granted that motion, Count III of FSF's Complaint will be dismissed.

### H. FSF's Motion to Strike Defendants' Jury Trial Demand

Subsequent to oral argument on the motion for summary judgment, FSF filed a Motion to Strike Defendants' Jury Trial Demand [Docket No. 29].  As the Court has granted FSF's motion for summary judgment and dismissed Count III of FSF's Complaint, the Court has rendered final judgment on all claims. Accordingly, FSF's motion to strike Defendants' jury demand will be denied as moot.

Additionally, FSF requests attorneys' fees and costs associated with bringing its motion to strike Defendants' jury demand.  As described above, FSF, by affidavit, will set forth its attorneys' fees and costs associated with this litigation.  Plaintiffs will be given an opportunity to file an opposition concerning the amount of FSF's attorneys' fees and costs.  After this opposition is filed, the Court will determine reasonable attorneys' fees and costs, and that amount will be added to the judgment amount described above.

## IV.   CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.   Plaintiff Farnam Street Financial, Inc.'s Motion for Summary Judgment [Docket No. 12] is **GRANTED**.

2.   Count III of the Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

3.   Plaintiff's Motion to Strike Jury Demand [Docket No. 29] is **DENIED** as moot.

4.   The Clerk of Court is directed to enter judgment in favor of Farnam Street Financial, Inc., and against Defendants Balaton Group, Inc. and Robert Kubbernus, jointly and severally, in the amount of $283,382.40.

5.   Within twenty (20) days of the filing of this Order, Farnam Street shall file an affidavit setting forth its costs and attorneys' fees incurred in enforcing its rights under the Lease Agreement and Guaranty.  Within twenty (20) days of FSF's filing of its affidavit, Defendants will submit opposition concerning the amount of FSF's requested attorney's fees.  The Court will then determine reasonable attorneys' fees and costs, and this amount will be added to the judgment amount described above.

6.   Defendants must immediately secure and deliver to Farnam Street all Equipment identified in "Attachment A: to Exhibit D of the Declaration of Wesley A. Olsen, which is incorporated herein by reference (the "Equipment"), at a location designated by Farnam Street.  The Equipment must be

packaged and delivered in accordance with Paragraph 7 of the Lease Agreement between the parties.

7.   If Defendants fail to deliver the Equipment to a location designated by Farnam Street, then they shall appear before this Court within ten (10) days to give testimony justifying delay and revealing the location of the property to show cause why an order of contempt should not be entered.

8.   Farnam Street is the owner of the Equipment and is hereby authorized to immediately sell or otherwise dispose of the property.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:   March 30, 2011                         s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court